# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

---

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY INDIAN RESERVATION,
988 S. 7500 E.
Fort Duchesne, Utah 84026,

                  Plaintiff,

   v.

STEPHEN MNUCHIN, SECRETARY,
UNITED STATES DEPARTMENT
OF THE TREASURY,
1500 Pennsylvania Ave., N.W.
Washington, DC 20220

                  Defendant.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
_____

Civil Case No.: _____

---

Plaintiff, **UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION**, a federally recognized Indian Tribe, by and through counsel, states and alleges as follows:

## INTRODUCTION

1. Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), H.R. 748, 116th Cong. (2020), in response to the COVID-19 national public health emergency. President Trump signed the Act into law on March 27, 2020. Title V of the CARES Act, Section 5001, amends the Social Security Act by creating the Coronavirus Relief Fund ("Section 601"), and appropriating $150,000,000,000 for fiscal year 2020 "payments to States, Tribal governments, and units of local government." Section 601(a)(1). Title V mandates that the Secretary of the United States Department of the Treasury "shall reserve . . . $8,000,000,000 of

such amount for making payments to Tribal governments."  Section 601(a)(2)(B).

2.      There are 574 federally recognized Tribal governments that maintain a government-to-government relationship with the United States.  These include Indian tribes and nations in the lower-48 states such as the Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation ("Tribe" or "Ute Tribe").

3.      Defendant Steven Mnuchin, Secretary of the U.S. Department of the Treasury ("Defendant" or "Secretary"), has taken steps to defy Congress's mandate under the CARES Act by diverting Title V relief funds away from sovereign tribal governments to more than 230 for-profit corporations incorporated under the laws of the State of Alaska and their shareholders. These are "state-chartered and state-regulated private business corporations," *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 534 (1998), that conduct business worldwide through dozens of subsidiaries.  These for-profit "state-chartered and state-regulated private business corporations" are not "Tribal governments," and thus are not eligible to receive Title V funds under the plain language of the CARES Act.

4.      The Secretary's designation and treatment of these private corporations as Tribal governments reduces the funds available for allocation and distribution to Plaintiff and other federally recognized Indian tribes which are in dire need of the funds to support necessary and increased expenditures caused by the COVID-19 pandemic.  The Secretary is required to disburse all $8,000,000,000 by April 26, 2020, meaning that the threatened harm to Plaintiff is imminent. Accordingly, Plaintiff seeks a court order to preliminarily and permanently enjoin the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of Alaska Native regional corporations and village corporations ("ANCs"), according to a reasonable formula consistent with the CARES Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362. Plaintiff Ute Tribe maintains government-to-government relations with the United States and has a governing body that is duly recognized by the Secretary of the U.S. Department of the Interior. Plaintiff asserts claims arising under the Constitution and laws of the United States, including the Administrative Procedures Act, 5 U.S.C. §§ 701-706.  The allegations of the Complaint give rise to an actual controversy within the meaning of 28 U.S.C. § 2201.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because the Defendant, the Secretary of the U.S. Department of the Treasury, is an officer of the United States and because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and the Secretary maintains his principal place of business in this District.

## PLAINTIFF

7.      Plaintiff Ute Indian Tribe is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020).   The Ute Indian Tribe exercises sovereign powers of self-governance and jurisdiction over the Uintah and Ouray Indian Reservation, which was established pursuant to various Congressional acts and Executive orders, including the Executive Order of October 3, 1861, confirmed by Congress in the Act of May 5, 1864, § 2 (13 Stat. 63), the Act of June 15, 1880 (ch. 223, 21 Stat. 1999), and Executive Order of January 5, 1882.   The Tribe brings this cause of action on its own behalf and as *parens patriae* on behalf of its tribal members to protect its members' health, welfare, and economic security and well-being.

**DEFENDANT**

8.      Defendant Steven Mnuchin, the Secretary of the U.S. Department of the Treasury ("Treasury"), is charged by Congress with allocating and distributing relief funds to Tribal governments under Title V of the CARES Act and is sued in his official capacity.  The Secretary's actions violate the plain language of the Act and threaten Plaintiff and its tribal members with imminent irreparable injury, as set forth below.

## THE COVID-19 CORONAVIRUS CRISIS AND PANDEMIC

9.      In December 2019, a novel coronavirus was first detected in Wuhan, Hubei Province, People's Republic of China.  Since then, the infectious disease, named COVID-19, has spread rapidly across the globe, causing 182,004 deaths worldwide at this time.[1]  On March 11, 2020, the World Health Organization declared the COVID-19 outbreak to be a pandemic, stating its deep concern over both the alarming levels of spread and severity, and the alarming levels of inaction as the rates of infection continued to rise across the world.[2]

10.      On March 13, 2020, President Trump issued a Proclamation declaring a "National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak."  The Proclamation noted the need for all levels of government to implement preventative and proactive measures to slow the spread of the virus and treat those affected.[3]

---

[1] *See* the John Hopkins Coronavirus Resource Center website, https://coronavirus.jhu.edu/map.html (last visited on 4/22/2020).

[2] Tedros Adhanom Ghebreyesus, *WHO Director-General's opening remarks at the media briefing on COVID-19*, World Health Org. (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[3] Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, The White House (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

11.     According to the John Hopkins Coronavirus Resource Center, as of April 22, 2020, the United States has 834,858 cases of COVID-19, and has suffered 45,894 deaths.[4]  The Centers for Disease Control and Prevention (CDC) report that "[t]he federal government is working closely with state, local, tribal, and territorial partners, as well as public health partners, to respond to this situation."[5]

12.     COVID-19 is causing devastating harm in Indian country.  As of April 22, 2020, the Navajo Nation alone has reported 1,406 cases and 48 deaths related to COVID-19.[6]  A headline in the tribal newspaper, the Navajo Times, reads: "*Out of caskets, freezer space, funeral home scrambles to serve COVID-19 families*."[7]  The Pueblo of Zuni has reported 33 cases.[8]  And the Cherokee Nation has reported 28 cases with one fatality as of April 9.[9]  As the Washington Post has reported, Native Americans suffer from disproportionately high rates of diabetes, cancer, heart disease, asthma, factors that place the native population at increased risk of fatal complications from COVID-19.[10]

---

[4] *See* John Hopkins Coronavirus Resource Center website, https://coronavirus.jhu.edu/map.html (last visited on 4/22/2020).

[5] Ctrs. for Disease Control and Prevention, *Situation Summary*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html (last updated Apr. 7, 2020).

[6] Navajo Epidemiology Center Coronavirus Response, *Navajo Nation COVID-19 Cases*, https://navajo-nation-coornavirus-response-ndoh-nec.hubarcgiscom (last visited 4/22/2020).

[7] Navajo Times, 4/16/2020, p. 1.

[8] Press Release, Pueblo of Zuni, *Public Notice to the Zuni Community* (Apr. 15, 2020), http://www.ashiwi.org/COVID19/DailyPSAUpdate4-15-20.pdf.

[9] Chris Polansky, *Following First Death, Cherokee Nation Braces for Increase in Coronavirus Cases*, Pub. Radio Tulsa (Apr. 9, 2020), https://www.publicradiotulsa.org/post/following-first-death-cherokee-nation-braces-increase-coronavirus-cases.

[10] "Indian Country, where residents suffer disproportionately from disease, is bracing for coronavirus," Washington Post, 4/4/2020, https://www.washingtonpost.com/climate-environment/2020/04/04/native-american-coronavirus/ (last visited on 4/22/2020).

## THE IMPACT OF COVID-19 ON PLAINTIFF'S GOVERNMENTS AND CITIZENS

13.     In creating the Title V Tribal government stabilization fund, numerous members of Congress spoke directly to the tremendous hardships that COVID-19 has inflicted on federally recognized Tribal governments.  These governments have needed to engage in robust public health activities and to provide enhanced health care and other essential public services in response to the pandemic.  Simultaneously, the revenues from tribally-owned businesses that would normally support those governmental activities have evaporated overnight because Tribal governments have closed those businesses to help fight the virus and protect their communities, especially their elders and other high risk populations.

### The Uintah and Ouray Indian Reservation

14.     The Uintah and Ouray Indian Reservation encompasses more than 4.5 million acres of trust and fee lands located in the northeastern quadrant of the State of Utah.  In terms of land size, the Uintah and Ouray Reservation is the second-largest Indian reservation in the United States.  The Tribe has approximately 3,157 enrolled members and over half its membership resides on the Reservation.

15.     The Ute Indian Tribe's tribal government provides services to its citizens and manages the Reservation through 60 tribal departments and agencies, including public safety and law enforcement services; a tribal jail; a civil, criminal and juvenile court system; critical infrastructure; maintenance services for government and community facilities; a health clinic; behavioral health and social services; an energy and minerals department; fish and wildlife department; tribal emergency management department; elder care and adult education programs; a Head Start program; and community programs for youth and adults.

16.     The Tribe also operates several tribal businesses on the Uintah and Ouray

Reservation including a supermarket, gas stations, a bowling alley, a tribal feedlot, an oilfield services company, and an energy exploration and development company. The Tribe's governmental programs and tribal enterprises employ approximately 741 people, seventy-five percent of whom are tribal members.

17.     In response to the COVID-19 crisis, the Ute Indian Tribe declared a State of Emergency and issued a shelter in place order. The Tribe has placed non-essential employees on paid administrative leave and has closed all of its enterprises, except the gas stations. The closure of these enterprises has severely impacted the Tribe's income which the Tribe needs to fund essential government services and employee salaries. The biweekly cost for paid administrative leave alone is $750,000.00 in base wages, *excluding* benefits.

18.     The Ute Indian Tribe has already appropriated $2,693,000 for emergency assistance grants to tribal members through a tribal Disaster Relief Program. The Tribe is also incurring substantial additional expenses to address the COVID-19 crisis. For example, the Tribe's Emergency Management Department has been tasked with providing assistance to Reservation residents and maintaining basic services such as meals for children and elders who normally eat at school and senior citizen centers, increased garbage and sanitation services, policing, and other basic services. The emergency services provided by the Ute Indian Tribe during the State of Emergency are unbudgeted expenses.

19.     As of April 22, 2020, the Tribe's emergency efforts have prevented any COVID-19 cases on the Uintah and Ouray Reservation.

20.     The Ute Indian Tribe submitted the Certification for Requested Tribal Data through the Department of Treasury website portal necessary to participate in the disbursement of CARES Act Title V funding on April 16, 2020.

## CONGRESS APPROPRIATED CORONAVIRUS RELIEF FUNDS FOR TRIBAL GOVERNMENTS—NOT FOR ALASKA NATIVE CORPORATIONS

21.    Title V of the CARES Act, Section 5001, amends the Social Security Act by creating the Coronavirus Relief Fund ("Section 601") and appropriating $150,000,000,000 for fiscal year 2020 "payments to States, Tribal governments, and units of local government."  Section 601(a)(1).  Title V mandates that the Secretary of the U.S. Department of the Treasury "shall reserve . . . $8,000,000,000 of such amount for making payments to Tribal governments."  Section 601(a)(2)(B).  The Secretary is required to disburse these stabilization funds to Tribal governments "not later than 30 days after the date of enactment of this section," Section 601(b)(1), that is by April 26, 2020.

22.    States, Tribal governments, and units of local government must use Title V funds "to cover only those costs of the State, Tribal government, or unit of local government that— (1) are necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19); (2) were not accounted for in the budget most recently approved as of the date of enactment of this section for the State or government; and (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020."  Section 601(d).

23.    The portion of the $8,000,000,000 paid "to a Tribal government shall be the amount the Secretary shall determine, in consultation with the Secretary of the Interior and Indian Tribes, that is based on increased expenditures of each such Tribal government (or a tribally-owned entity of such Tribal government) relative to aggregate expenditures in fiscal year 2019 by the Tribal government (or tribally-owned entity) and determined in such manner as the Secretary determines appropriate to ensure that all amounts available under subsection (a)(2)(B) for fiscal year 2020 are distributed to Tribal governments."  Section 601(c)(7).

24.     Congress defined the three types of governments to whom the Secretary is authorized to pay relief funds.  "The term 'State' means the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Commonwealth of the Northern Mariana Islands, and American Samoa."  Section 601(g)(4).  "The term 'unit of local government' means a county, municipality, town, township, village, parish, borough, or other unit of general government below the State level with a population that exceeds 500,000."  Section 601(g)(2).

25.     Under Title V, "[t]he term 'Tribal government' means the *recognized governing body* of an Indian Tribe."  Section 601(g)(5) (emphasis added).  Title V further provides that "[t]he term 'Indian Tribe' has the meaning given that term in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304(e))."  Section 601(g)(1).

26.     The Indian Self-Determination and Education Assistance Act (ISDEAA) defines "Indian tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C. §1601 et seq.], *which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians*."  25 U.S.C. § 5304(e) (emphasis added).  Notably, while this definition includes Alaska Native villages or regional or village corporations, it does so only if those entities are also "*recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians*."  Id. (emphasis added)

27.     In the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454 (108 Stat. 4791, 4792) ("Tribe List Act"), Congress required the Secretary of the U.S. Department of the Interior ("Interior") to prepare a list of exactly those entities: "The Secretary [of the Interior]

shall publish in the Federal Register a list of all Indian tribes which the Secretary *recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians*." 25 U.S.C. § 5131(a) (emphasis added).

28.     As it does each year, on January 30, 2020, acting pursuant to the Tribe List Act, Interior published its list of 574 "Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs."  85 Fed. Reg. 5462-01 (Jan. 30, 2020) ("This notice is published pursuant to Section 104 of the Act of November 2, 1994 (Pub. L. 103-454; 108 Stat. 4791, 4792) . . . .").  These *recognized* entities include "Indian Tribal Entities Within the Contiguous 48 States Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs" as well as "Native Entities Within the State of Alaska Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs."  Id. at 5462, 5466 (noting "We have continued the practice of listing the Alaska Native entities separately for the purpose of facilitating identification of them.").

29.     While this list of 574 federally recognized Indian tribes includes more than 200 Alaska Native villages, it does not include any Alaskan Native regional or village corporations ("ANCs").  Because ANCs are not "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians," they are not "Indian Tribes" for purposes of Title V of the CARES Act.  And because ANCs are not "Indian Tribes," they are not "Tribal governments," which Title V defines as "the recognized governing body of an Indian Tribe."  Section 601(g)(5).

30.     Accordingly, ANCs are not eligible to receive any Coronavirus Relief Fund payments under Title V of the CARES Act.  The Act specifies that the Secretary "shall" distribute Title V relief funds to "each State and Tribal government."  Section 601(b)(1).  The statutory

language is mandatory and unambiguous.  The Secretary has no discretion to disregard Congress's mandate by designating and treating ANCs as "Tribal governments."  The Secretary is required to carry out the Congressional intent by disbursing relief funds to federally recognized Tribal governments, exclusive of ANCs.  This is the only interpretation of the CARES Act that gives effect to the Congressional intent.

31.    ANCs are not governments—they are for-profit corporations incorporated under the laws of the State of Alaska, created pursuant to the Alaska Native Claims Settlement Act (ANCSA).  See 43 U.S.C. § 1602(g), (j) (defining Alaska Native regional corporations and village corporations).   These private corporations, like other corporations, are owned by their shareholders, including non-Indian shareholders.  And ANCs, like other corporations, have access to funding opportunities under other sections of the CARES Act, whereas Tribal governments are not eligible for all of those funding sources.  Congress is clear that Title V relief funds are to supplement "*government*" budgets, not corporate coffers. Section 601(d)(2).

32.    There are more than 230 separate ANCs, including 12 regional corporations and approximately 225 village corporations.[11]  The 12 regional corporations alone have over 138,000 shareholders,[12] and own scores of corporate subsidiaries, operating in all 50 states and countries across the globe.[13]  Their business holdings include everything from construction to pipeline

---

[11] Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited 4/222020).  A 13th Regional Corporation was also formed for non-resident Alaska Natives, but the current status of the 13th Regional Corporation is unclear.  See, e.g., ANCSA Reg'l Ass'n, About the Alaska Native Claims Settlement Act, https://ancsaregional.com/about-ancsa/ (last visited 4/22/2020) (noting that the 13th Regional Corporation was involuntarily dissolved by the State of Alaska in 2013).

[12] ANCSA Reg'l Ass'n, *Economic Impacts*, https://ancsaregional.com/economic-impacts/ (last visited 4/22/2020).

[13] Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited 4/22/2020); NANA Reg'l Corp. Inc., *Overview* (May 17, 2017), https://www.nana.com/regional/shareholder-relations/Shareholder-Preference/files/2017_NRC_One_Sheet_OVR_0256_1024_Part1.pdf.

maintenance to real estate management to telecommunications to government and military contracting to environmental remediation to facilities maintenance to catering and camp services to venture capital and financial management to aerospace engineering.[14]

33.     Nor do ANCs have "recognized governing bodies." A "recognized governing body" pertains to a political body that serves the interests of "citizens," the "body politic," not corporate shareholders. ANCs are not governments, they do not govern, and they do not provide government services. Instead, ANCs have corporate boards of directors and are owned by private individuals. *See* 43 U.S.C. § 1606(f) (providing that the management of regional corporations "shall be vested in a board of directors"). Because ANCs do not have "recognized governing bodies," they do not qualify as "Tribal governments" under Title V and are not eligible for relief funds.

34.     Even if such boards could be characterized as "governing bodies," which they cannot, these boards are not "recognized." "Recognition" is an Indian law term of art that refers to entities with a government-to-government relationship with the United States, which ANCs simply do not have. While the Secretary of the Interior recognizes Tribal governments, they do not recognize as authoritative the so-called governing bodies of ANCs. *See, e.g.*, Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5462 (Jan. 30, 2020) (Interior stating that "The listed Indian entities are acknowledged to have the immunities and privileges available to federally recognized Indian Tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations, and obligations of such Tribes."). ANCs openly represent

---

[14] See Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited 4/22/2020); Alaska Bus., *The 2019 Top 49ers*, https://digital.akbizmag.com/issue/october-2019/the-2019-top-49ers/ (last visited 4/22/2020).

in their own public-facing materials that they do not maintain a government-to-government relationship with the United States.[15]

## THE SECRETARY'S DESIGNATION OF ALASKA NATIVE CORPORATIONS AS TRIBAL GOVERNMENTS VIOLATES THE CARES ACT

35.    Congress mandated that the Secretary only allocate and distribute Title V relief funds to federally recognized Tribal governments.  Nevertheless, the Secretary has determined to treat ANCs as "Tribal governments" for purposes of making these payments.  The Secretary's action violates the CARES Act.

36.    In order to determine the amounts that would be paid to each Tribal government under Title V, and as a condition of funding, the Secretary requested certain data from Tribal governments on or about Monday, April 13, 2020, publishing a Certification for Requested Tribal Data ("Certification") form on the Treasury website.[16]

37.    It is clear from the Certification form that the Secretary has determined to treat ANCs as Tribal governments for purposes of allocating and disbursing Title V Coronavirus Relief Funds.  The Certification asks each funding applicant to state its "Population: Total number of Indian Tribe Citizens/Members/Shareholders, as of January 1, 2020" (italics added) and includes a Note defining "Indian Tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688, 43 U.S.C. 1601 et seq.), which is recognized as eligible for the special programs and services provided by the

---

[15] *See, e.g.*, ANCSA Reg'l Ass'n, *Overview of Entities Operating in the Twelve Regions*, https://ancsaregional.com/overview-of-entities/ (last visited 4/22/2020) (stating that both regional corporations and village corporations "do not possess a government-to-government relationship with the federal government").

[16] U.S. Dep't of the Treasury, *Submission Required for Receipt of Coronavirus Relief Fund Payments* (Apr. 13, 2020), https://forms.treasury.gov/caresact/stateandlocal (last visited 4/22/2020).

United States to Indians because of their status as Indians."

38.     The Certification also asks for "Land Base: Total number of land acres held by the Indian Tribe and any tribally-owned entity (to include entities in which the Indian Tribe maintains at least 51% ownership) as of January 1, 2020 (to include lands held in trust by the United States, owned in restricted fee status, owned in fee, or selected pursuant to the Alaska Native Claims Settlement Act)."  Lands "selected pursuant to the Alaska Native Claims Settlement Act" are ANC-owned lands.  In *Alaska v. Native Village of Venetie Tribal Government,* 522 U.S. 520 (1998), the Supreme Court explained that through ANCSA "Congress authorized the transfer of . . . approximately 44 million acres of Alaska land to state-chartered private business corporations," *id.* at 524, "without any restraints on alienation or significant use restrictions, and with the goal of avoiding 'any permanent racially defined institutions, rights, privileges, or obligations,'" *id.* at 532-33 (citations omitted).[17] ANC-owned lands are *not* Indian country. *Id.*

39.     The Treasury website provides that "Governments eligible for payments must provide payment information and required supporting documentation through the electronic [Certification] form accessible below.  To ensure payments are made within the 30-day period specified by the CARES Act, governments must submit completed payment materials not later than 11:59 p.m. EDT on April 17, 2020.  Eligible local and Tribal governments that do not provide required information—and in the case of a local government, the required certification—by 11:59 p.m. EDT on April 17, 2020, may not receive any payment from the Fund."[18]  According to the website of the U.S. Department of the Interior, Indian Affairs, payments will be paid no later than

---

[17] *See also* ANCSA Reg'l Ass'n, *Overview of Entities Operating in the Twelve Regions,* https://ancsaregional.com/overview-of-entities/ (last visited 4/22/2020) ("Through ANCSA, Alaska Native corporations hold title to roughly 44 million acres of land held in private corporate ownership.").

[18] U.S. Dep't of the Treasury, *The CARES Act Provides Assistance for State and Local Governments,* https://home.treasury.gov/policy-issues/cares/state-and-local-governments (last visited 4/22/2020).

April 24, 2020, once the recipient has registered through the web portal.[19]

40.     The Secretary's designation of ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is a final agency action for purposes of judicial review under 5 U.S.C. § 704.

### PLAINTIFF HAS STANDING TO PURSUE THIS ACTION

41.     The Secretary's action threatens the Plaintiff Ute Indian Tribe and its members with imminent, irreparable injury.   The Tribe has submitted its Certification with all required information to the Secretary to receive funds under Title V.   The Secretary must distribute these funds by April 26, 2020.

42.     Once the Secretary allocates and distributes the defined, limited pool of Title V Coronavirus Relief Funds to Tribal governments, inclusive of ANCs, the Plaintiff Tribe will lose any access or ability to receive the portion of that limited pool illegally appropriated to the ANCs. Plaintiff Ute Indian Tribe is in dire need of these funds to cover the governmental costs resulting from the increased and necessary expenditures associated with the COVID-19 pandemic.   The Tribe's most recent budgets could not foresee and did not account for the tremendous financial strain that a global pandemic would place on its governmental operations.

43.     The Ute Indian Tribe has already expended significant funds as a result of the COVID-19 crisis, including $2,693,000 in emergency assistance grants to tribal members through a tribal Disaster Relief Program.   In addition, the Tribe is providing a broad array of unbudgeted emergency services, including, for example, daily operation of its Emergency Management Department, delivering meals to elders and children no longer able to access senior centers and

---

[19] Indian Affairs, U.S. Dep't of the Interior, *Indian Affairs to Assist Tribes Eligible to Receive Funding from Treasury Under the Coronavirus Relief Fund* (Apr. 14, 2020), https://www.bia.gov/as-ia/opa/online-press-release/indian-affairs-assist-tribes-eligible-receive-funding-treasury-under (last visited 4/22/2020).

public schools, increased cleaning and sanitation supplies and work, accounting services associated with tracking expenditures above normal budgeted activity, and planning for the reopening of tribal government.  The Ute Indian Tribe has been forced to maintain all essential services for its citizens despite a reservation-wide shelter-in-place State of Emergency order and the closure of its tribal government and virtually all of its tribal enterprises.

44.    The increased and necessary expenditures by Plaintiff and other federally recognized Tribal governments resulting from the devastating impacts of the COVID-19 pandemic are exactly the costs that Congress intended the Coronavirus Relief Funds to cover.  Congress did not intend for these funds to be paid to private, for-profit corporations, who seek to maximize financial return for their tens of thousands of individual shareholders.

45.    Two scenarios illustrate the injury caused by the Secretary's designation of ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds.  Under the first scenario, if the Secretary allocates the $8,000,000,000 equally among all 574 federally recognized Tribal governments, each Tribal government would receive just under $14,000,000.  If the Secretary includes the 237 ANCs, however, an equal allocation among all 811 entities would reduce that amount to less than $10,000,000, a difference of more than $4,000,000 for each of the 574 federally recognized Tribal governments.  The Plaintiff Ute Indian Tribe would thus lose approximately 30% of its properly allocated share of Title V funds through the illegal appropriation of those funds to ANCs.

46.    Under the second scenario, the Secretary may allocate the $8,000,000,000 considering the population, land base, employees, and expenditures of each Tribal government. The data requested by the Certification form indicates that the Secretary is considering this approach.  Under this approach, the ANCs will have an outsized impact.  Together, the ANCs own

approximately 44 million acres of land.[20]  These landholdings are equivalent to the total trust land base of *all federally recognized Tribal governments* in the lower-48 states combined.[21]  The 12 regional ANCs alone have over 138,000 shareholders, employ more than 43,000 people worldwide, and generated more than $10.5 billion in revenues in 2018.[22]  Under any formula that considers ANCs' corporate shareholders, land base, employees, and expenditures, the relief funds available to federally recognized Tribal governments, including the Ute Indian Tribe, will be vastly reduced.

47.     Under either scenario, because some ANCs are closely affiliated with federally recognized Alaska Native villages, and many corporate shareholders are tribal members, some entities in Alaska would effectively "double dip" (in some cases "triple dip") from the limited pool of funds, with the same community receiving duplicative funding – one allotted to the corporation(s), and the other directly to the federally recognized Tribal government.  On the other hand, if the Secretary properly allocates and distributes Title V funds directly to federally recognized Tribal governments only, Alaska Native villages may use their funds in partnership with ANCs if they determine that is the most effective way to meet the needs of their communities, consistent with the other requirements of the Act.

48.     This Court can redress the Secretary's injury to the Plaintiff Ute Tribe by awarding declaratory and injunctive relief enjoining the Secretary not to treat ANCs as Tribal governments

---

[20] Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited 4/22/2020).

[21] Office of the Special Tr. for American Indians, U.S. Dep't of the Interior, *OST Statistics and Facts*, https://www.doi.gov/ost/about_us/Statistics-and-Facts (last visited 4/22/2020) ("The Indian trust consists of 55 million surface acres and 57 million acres of subsurface minerals estates held in trust by the United States for American Indians, Indian tribes and Alaska Natives. Over 11 million acres belong to individual Indians and nearly 44 million acres are held in trust for Indian tribes.").

[22] *See* Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited 4/22/2020).

for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress under Title V to federally recognized Tribal governments, exclusive of ANCs, according to a reasonable formula consistent with the CARES Act.

## COUNT I
### (Declaratory and Injunctive Relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-2202)

49.     Plaintiff restates, realleges, and incorporates by reference all preceding paragraphs and allegations.

50.     The APA authorizes judicial review of federal agency actions.  5 U.S.C. § 702.

51.     The APA provides that the reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  It further provides that a reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(C).

52.     Under Title V of the CARES Act, Alaska Native regional corporations and village corporations do not meet the statutory definition of "Tribal government," do not meet the statutory definition of "Indian Tribe," and do not have a "recognized governing body."

53.     By designating ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, the Secretary has acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the CARES Act and the APA, 5 U.S.C. §§ 701-706.  Plaintiff Ute Indian Tribe is entitled to an order declaring the same.

54.     By designating ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, the Secretary has acted in a manner that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the CARES Act and the APA, 5 U.S.C. §§ 701-706.  Plaintiff Ute Indian Tribe is entitled to an order declaring the same.

55.     Plaintiff Ute Indian Tribe is entitled to an emergency temporary restraining order, and preliminary and permanent injunctive relief, enjoining the Secretary from designating or otherwise treating ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of ANCs, according to a reasonable formula consistent with the CARES Act.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Ute Indian Tribe respectfully requests that this Court:

56.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiff Ute Indian Tribe that the Secretary's designation of Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

57.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiff Ute Indian Tribe that the Secretary's designation of Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is in excess of the Secretary's statutory jurisdiction, authority, limitations, or short of statutory right.

58.     Preliminarily and permanently enjoin the Secretary not to designate or otherwise treat Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of Alaska Native regional corporations and village corporations, according to a reasonable formula consistent with the CARES Act.

59.     Award Plaintiff Ute Indian Tribe its reasonable attorney's fees, costs and such other relief as the Court deems just and appropriate.

DATED this 23rd day of April, 2020.

**FREDERICKS PEEBLES & PATTERSON LLP**

*s/ Rollie E. Wilson*
Rollie E. Wilson (D.C. Bar No. 1008022)
401 9th Street, N.W., Suite 700
Washington, D.C. 20004
Telephone: (202) 450-4887
Facsimile: (202) 450-5106
Email: rwilson@ndnlaw.com

*s/ Frances C. Bassett*
Frances C. Bassett, (CO Bar No. 11970),
*Pro Hac Vice Admission*
Jeremy J. Patterson, (CO Bar No. 38192),
*Pro Hac Vice Admission*
Jeffrey S. Rasmussen, (WA Bar No. 21121),
*Pro Hac Vice Admission*
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: (303) 673-9600
Facsimile: (303) 673-9155/9839
Email: fbassett@ndnlaw.com
Email: jpatterson@ndnlaw.com
Email: jrasmussen@ndnlaw.com

*Counsel for Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation*

20